Page 18-5418 United States of America v. Adrian Ausberry Argument not to exceed 15 minutes per side Ms. Coffin, you may proceed to the attendant when you're ready Good morning. I'm Jennifer Coffin. I'm here today on behalf of Adrian Ausberry I'd like to reserve three minutes of my time. Thank you Mr. Ausberry challenges one thing today in his appeal and that is the four-level increase to his offense level that resulted from this court's changed interpretation of the force clause in United States v. Verweeby, which was decided after he committed his offense When did Voisin come out? Voisin came out in June of 2016 and Mr. Ausberry committed his offense in February of 2017 So it was before the offense and before the sentencing It was. It is Mr. Ausberry's position, however, that the changed interpretation of the force clause in Verweeby violated the ex post facto principles that are embodied in the due process clause because Verweeby, not Voisin, but Verweeby increased the measure of punishment that he could have anticipated under the binding precedent at the time he committed his offense I'd like to focus on What does this decision, Rogers v. Tennessee, 2001, U.S. Supreme Court say about ex post facto claims related to sentencing decisions and the guidelines? What does Rogers v. Tennessee say about guidelines? I thought it defeated this argument. I was asking in a gentle way If you want a more aggressive way, I would say it goes nowhere I'll give you your choice You know what case I'm referring to, Rogers v. Tennessee? Yes, and in Rogers v. Tennessee, the Supreme Court actually was considering a change to the common law in the state of Tennessee There was a year and a day rule that had a very light foothold in the state of Tennessee that had actually otherwise become what is known as an outdated relic All other jurisdictions had abolished such a rule And in Rogers v. Tennessee, what the Tennessee Supreme Court did was it abolished that rule And in that case, the Supreme Court said there was not a due process violation because it was not unexpected and indefensible for the Tennessee Supreme Court to have come to that conclusion And also, it was about, in that case, the evolution of the common law In this case, we have a situation which is much more like Marks, which is also an application of Bowie And in Marks, the circumstances are almost identical to the circumstances here So Bowie is a due process claim, not ex post facto? Yes Okay, so that's what we're on now Yes, actually, I am focusing on the due process claim this morning, now which is the idea that Verweebe changed the law in an unforeseeable fashion with respect to Mr. Osberry So I take it if Foisin had dealt with this exact guideline or this exact provision, you wouldn't have a problem, right? I would Oh, go ahead Well, if Foisin had held that the term use in the force clause of the guidelines or the Armed Career Criminal Act applied to reckless conduct, it would be a slightly harder argument to me That was actually the hypothetical I thought was simpler than that Foisin involved this exact provision Had it, no, it didn't, I know it didn't I'm saying had it, wouldn't you say, well, we wouldn't have a due process problem? I would have to say probably that we wouldn't have that problem But it did not, and in fact, it dropped a footnote at footnote four The reason I ask that question is what's tricky is, you know, I happen to know the author of Verweebe and he seemed to think that's what Foisin required Now, he could have been wrong, but that just seems funny to think of it as a due process violation I mean, what goes up can go down, and, you know, at the time of sentencing, they do the best they can So it sounds to me like your question is, if Verweebe were mandated or required by Foisin Just a fair interpretation of it Well, that's exactly right Let's say it's a fair interpretation of Foisin And in fact, from Mr. Osbery's perspective for the due process argument your decision in Verweebe could have been entirely correct That doesn't mean that it wasn't unforeseeable with respect or in reference to the binding precedent that existed at that time Given that the courts of appeals are divided 5-3 on this exact issue That proves both sides are reasonable options Only one can be right, that's true But it doesn't say they're not predictable Well, it's unforeseeable in the sense that the law of the land in the Sixth Circuit until Verweebe was decided was that a reckless offense, especially one that encompasses reckless driving did not qualify under the Force Clause The fact that a couple of circuits before he committed his offense had decided, and in fact in both cases, they had not specifically considered the statute at issue in that case The fact that two circuits had started to move toward the direction of deciding that in light of Foisin, they would change their precedent doesn't mean that for Mr. Osbery in the Sixth Circuit he could have foreseen that this circuit would change its law in a way that was adverse to him How does this foreseeability due process argument work if hypothetically Hope Springs Eternal, the U.S. Supreme Court in three years says Verweebe is right So you're still stuck with the same problem He would have thought, he would have thought, what is it, McFalls? Is that the prior decision? McFalls, McMurray, Portela So he thinks that's the law, that's his expectation And we'll say you're right He could not have foreseen either Verweebe or the U.S. Supreme Court decision down the road What happens? Is it still, who cares? At the time of sentencing, the rug was pulled out from under him in terms of reasonable expectations So he has to be sentenced under McFalls. Is that your position? My position is, if the change Even though the law later is clarified I'll even call it dramatically clarified to suggest it wasn't that foreseeable You would still say there was an expectations problem And you look at this snapshot at the time he was sentenced as opposed to paying attention to the way the world unfolded Well, I would look at the snapshot at the time that he committed the offense Well, that's exactly the test, the due process test that got applied in Marx And I would like to talk about that for just a moment Because in Marx, the circumstances were these In 1966, the Supreme Court narrowly construed a term that could have many different interpretations But it narrowly construed that term And then it was the law of the land But it was also uncertain There was all kinds of litigation Cases were coming up to the Supreme Court Their docket was being overwhelmed with cases And in 1973, I don't know how many years that is right now But in 1973, the Court revisited that same term Same Court, same term, revisited and broadened the construction of that term And it was in that upsetting of the established narrowing construction that the Court said And obviously the Supreme Court thought it was right when it expanded the interpretation So it was correct when it did that It said that that correcting and expanding interpretation could not be applied retroactively to people who committed their offense before it happened That to me is the most relevant decision of the Supreme Court that applies in this case Because it's about a narrowed construction Remind me, he pled guilty, am I remembering that correctly? Mr. Osbery? Yeah Yes, he pled guilty But is that baked into the argument here? That at the time of plea, he had an expectation about it going down this road And that's what's the rug-pulling problem? In other words, it altered the expectations of what the deal would mean Am I helping articulate your argument? Well, you're helping me because Even though I would say that it actually is really measured at the time of the offense It was actually made worse by the fact that when he pled Verweedie had not been decided You were nervous when I asked because you weren't sure which way I was going with this But we have this case called Bradley, which I also wrote Which says at the time of the plea, that's what you're giving up You're giving up all kinds of things You don't know what the jury's going to do or not do And you don't know how the law will evolve And Bradley says that's kind of a tough luck situation Everybody's giving up things The government's giving up the law could evolve in ways that help them My answer to that would be that that particular inquiry Has not been the way that the courts have analyzed these due process questions In the context of the ex post facto principles embodied in due process So when we're talking about whether a change in the law And in particular when an explicitly narrowed construction Of a term, by the way, that the Supreme Court itself has called elastic So it could go out, it could come in And that when the same court changes the law of the land Then the question becomes what was foreseeable In reference to the binding law before that time There hasn't been any suggestion that in this inquiry We're talking about what happened at the plea And so I would say that I'm not sure that that is relevant to the inquiry here Doesn't Beckles suggest that the fact that their advisory The guidelines, that affects the due process equation? Well Beckles was talking about a different due process inquiry And in fact at the very end of the opinion the court goes out of its way To say that the inquiry in Beckles is entirely different from the inquiry When you're talking about ex post facto And Pew is really the situation that deals with a change And the question whether the measure of punishment has been increased In a way that was unanticipated And even though Mr. Osbery's argument is that Borden did not complete the analysis Borden didn't suggest that there was no such thing As a due process problem in the advisory guideline context And also no other case has said that So I would say that Pew is the most analogous ex post facto case From which we can say that that is not the answer to the Beckles does not tell us that there's no such thing anymore In fact it says the opposite because it says the inquiries are different Oh and I also just very quickly would like to say That the government filed a 28J letter in which it raised a new case And that is out of the 5th circuit And the 5th circuit did address This is one of the first cases to do this The argument that the defendant made there That there was a due process violation there And I would just like to say And I didn't get a chance to respond in writing But Burris should be unpersuasive here And the reason is for one of the reasons that Mr. Osbury puts in his brief Which is Burris takes the reasons why The Supreme Court decision of South Carolina Was unexpected and indefensible Takes those reasons and conflates them into the actual test And Mark's being an application of Bowie Tells us that all five of those things do not have to be present In order for a new interpretation to be unforeseeable And this is especially true when we're talking about An expansion of a previously narrowed construction That upsets the settled law that had been in place at the time That the defendant committed his offense So, thank you May it please the court Good morning My name is Luke McLaurin and I'm here on behalf of the United States Mr. Osbury's sentence should be affirmed Because the district court correctly applied This court's binding decisions in Verweeve and Harper To conclude that Osbury's prior Tennessee conviction For reckless aggravated assault Qualifies as a crime of violence under the guidelines Contrary to Osbury's contention Neither the ex post facto clause Nor the due process clause Provide him a basis on which he can challenge The application of Verweeve to his case It's very clear, it's well settled In numerous Supreme Court decisions That the ex post facto clause Simply does not apply to judicial decisions It's a restraint on legislative action Now, there are some due process limitations On the retroactive application of judicial decisions But the Supreme Court's decisions in Beckles and Irisary Make clear that the due process concerns That underlie that jurisprudence Are not implicated by judicial decisions Interpreting the scope of advisory guidelines Now, I acknowledge that there's been a lot of discussion about Pew And Pew is a case that involved the guidelines And it involved ex post facto And I think there's a sort of natural reaction to say Well, Pew says ex post facto applies to the guidelines But then we also have Beckles And we have to read those two decisions together And the Supreme Court actually tells us how you harmonize them It says, you have to look at the actual Constitutional inquiry involved The guidelines implicate some constitutional concerns But they don't implicate every constitutional concern So you have to be focused on What is the actual constitutional concern Raised by the particular challenge In Pew, under the ex post facto clause The inquiry the court had to engage in Was whether there was an increased risk of punishment In Beckles, the court had to focus on the very same Due process inquiry that's involved here The due process inquiry about the right to fair notice And fair warning And the Supreme Court could not have been more explicit That the guidelines do not implicate that concern Of fair warning and notice And the reason for that is because In an advisory guidelines system No defendant, nor the government Has an expectation That a defendant is going to receive a sentence Within the advisory guidelines range You remind me, I don't remember the facts of Pew What was the setting in Pew? Well, Pew involved a situation where the commission itself Had amended the guideline And so that the newer guideline It was a fraud guideline Clearly provided a higher offense level For the very same conduct It was a later version of the guidelines That amendment could apply And the issue was Because normally when a person is sentenced You apply the version of the guidelines In effect on the date of sentencing And the problem was the version of the guidelines In effect on the date of Mr. Pew's conduct Had a drastically lower base offense level Just dictated by the guidelines Because the guidelines had been amended But I mean, that was also an advisory setting though, right? It was an advisory setting But it was a change that was explicitly made To the guidelines by the sentencing commission So we're dealing I'm just trying to figure out the difference The difference I can only see here Is the difference between the commission Changing it And court decisions And the questions whether that's change Or on and on about what that means Is that the difference? In the two settings Not the doctrine, the settings I think it is part of the It is the difference because of the doctrine, Judge Legislatures, the commission They have the authority to amend laws Change guidelines The court does not I see, so a guideline's a law Even if it's not mandatory Well, it's like a law It's similar to a law It's a thing that this court Even if this court doesn't like a guideline Doesn't have power to change the guideline This court is simply interpreting guidelines So when this court interpreted The plain language of the word use of force In 4B1.1 When it was engaging its analysis in Berweave It was not changing the guideline It was saying what that guideline had always meant That's the theory of statutory interpretation That the Supreme Court says we must use If you look at I take it it is symmetric In other words, you have interpretations that lighten Absolutely That, I quote, retroactively As well as interpretations that harshen Yes, and that's what I mean, I think it's helpful If you look at what the Supreme Court has said About this kind of issue of statutory interpretation In Rivers v. Roadway They said, look, the essence of judicial decision-making Involves applying general rules to particular situations So it's necessarily going to involve Some peril to individual expectations And it's often going to be difficult to predict The precise application of a general rule Until it has been distilled in the crucible of litigation And those are the reasons why Courts are hesitant to say What case are you citing? That's Rivers v. Roadway Incorporated cited in our brief And that's the reason why But that's also not a criminal case, right? It's not a criminal case It's a retroactivity case, but it's not a criminal case But the quote there was talking about What is going on in statutory interpretation What is going on is courts are saying What the statute has always meant They're not changing the statute They don't have authority to do that And that's why the concerns about The ex post facto concerns that apply Under the ex post facto clause to legislatures Are not incorporated jot for jot Into the due process clause I think you hinted at this earlier In Rogers v. Tennessee, Judge Sutton That's expressly what the Supreme Court said Look, this due process concern we have About retroactive application of judicial decisions It is not the exact same concern That exists in the ex post facto clause The due process clause does not incorporate Jot for jot every part of the ex post facto clause So if the comments to the guidelines Had changed to say that recklessness Is clearly enough That would be okay A defendant would be okay under Pew Is that what you're saying? But not because our court changed its mind Pursuant to the United States Supreme Court Yeah, when an institution like the legislature Exercising legislative type powers Like the Sentencing Commission And when amending the guidelines If it makes a change That's potentially subject to the ex post facto clause It seems that this defendant didn't get notice Well, as a practical matter This defendant did have notice At the moment he entered his plea The moment he was indicted He had notice he could receive A potential sentence of 0 to 120 months The statutory penalty range He in fact said his own expectation Was that his guidelines range Was going to be 92 to 115 And he in fact received a sentence Within the guidelines range he expected Would be applied in his case He had notice of voisine What he didn't have notice of Is how voisine would be interpreted But that gets back to that But am I right? He had notice of voisine, right? That's fair He did have notice of voisine I would argue he also had notice Of how voisine would be interpreted Two circuits At least two circuits The 5th and the 8th Had already applied voisine To the ACCA and the guidelines Prior to his conduct in this case So he had notice And I would point out We were addressing this foreseeability issue earlier Judge Sutton You noted that there's a 5-3 split Among the circuits About whether voisine applies to other contexts There may be a 5-3 split about that But there's a 9-0 unanimous view Among all the circuits That voisine raises serious questions About whether prior precedent Saying that recklessness doesn't count Should be overturned You know, every circuit Even the three circuits That have refused to do what the 6th circuit has done Have all recognized Look, voisine raises very serious questions You look at the most recent decision The 9th circuit's decision in Osana They said, look, voisine very Seems to suggest we should overrule our precedent But we're not going to You have a case that Talks about this type of setting Where this kind of thing was forecast So it's a criminal setting And the point was forecast I don't care whether it involves Changes to guidelines Or interpretations of guidelines Or for that matter Interpretations of criminal statutes Do you have a case that deals with this kind of situation? We have two cases that deal with this exact situation Which we put in our 28-J letter Both from the 5th circuit That dealt with this exact same One of them dealt with this exact same issue The 5th circuit's change Have they gone the other way on this exact same issue? No, there are no circuits that I am aware of That have gone the other way There's also no cases out there That I am aware of that have ever said A judicial interpretation of an advisory guideline Is subject to a due process challenge And it would be hard to reach that conclusion In light of Beckles Now I acknowledge Beckles and Pew do appear to be in tension But they are both Supreme Court decisions They are both binding We have to presume that they can be reconciled And the way we reconcile them Is by doing what Beckles tells us to do Which is to look at the underlying constitutional inquiry And Beckles said When your constitutional inquiry is about Whether something provides notice The guidelines simply do not Implicate that constitutional inquiry They do implicate a constitutional analysis That is focused on whether There is an increased risk of punishment Which is why the Ex Post Facto Clause Applies to commission changes to the guidelines But here we are dealing with That due process notice concern So our position, just to clarify Is that the whole argument here about You know, applying Ver Weeb Violates due process That has no basis in the due process clause The concerns that animate the due process clause Are not implicated by judicial decisions Interpreting advisory guidelines Even if they were, however We think applying Ver Weeb in this case Is completely consistent with due process For all the reasons that the Fifth Circuit recently said And for what we've been talking about earlier With this whole notion of foreseeability I mean, at the time that Mr. Osbery committed his offense Voisin was the law And what Voisin was interpreting Was the very plain language of the guideline Ver Weeb's change of this circuit's precedent Was based on the plain language of the statute It wasn't some sort of unforeseeable Or completely unreasonable decision I understand that the defense bar Would have liked this court not to reach that conclusion But it certainly was a foreseeable conclusion It wasn't unexpected, it wasn't indefensible With regard to the law that existed before Unless there are any other questions about this issue I'm certainly happy to address the other issue That the defendant has raised We think it's adequately addressed in our brief If I would point out, the issue could only possibly Be reviewed with plain error About Tennessee reckless aggravated assault Possibly not counting as a crime of violence Simply because the deadly weapon used Can be a motor vehicle We think this court's case law squarely precludes that There are numerous decisions from this court That have said that reckless aggravated assault And intentional aggravated assault Involving a deadly weapon counts It has as an element the use of force The only basis they have for their argument Is this line of eight circuit decisions That are based on one decision that was based on Begay And it used Begay, a residual clause Supreme Court case That has now been abrogated To interpret the use of force clause in the guidelines And the underpinnings of that case In drawing a distinction and pulling out Making a distinction between reckless offenses That can be committed by driving Versus other reckless offenses Makes no sense in light of Subsequent developments in the law So we would ask this court not to Adopt the strange jurisprudence of the eighth circuit In fact, that jurisprudence has been repeatedly criticized By judges on that court and by other circuits This court should follow its own precedent And hold that Tennessee reckless aggravated assault Categorically qualifies as a crime of violence Unless there are any other questions We ask the court to affirm Mr. Osbury's sentence in this case Thank you I'd just like to make a couple points The first is that retroactivity Is a distinct question from interpretation It may well be that an interpretation is correct And the only interpretation And it tells us what the law always was But that doesn't tell us that That particular interpretation Always must apply retroactively When the interpretation benefits a defendant And we know this from long experience There are all kinds of barriers to retroactivity Finality, comedy, 2255 All of the barriers to redressability Is a different question from whether The interpretation was wrong or right So when it disadvantages this new interpretation Correct or incorrect The reason why it can't be applied retroactively Is because of the ex post facto principle Embodied in the due process clause It is not true that the ex post facto principle Because it's embodied in the due process clause Doesn't have the same concern As the ex post facto clause itself It may have some different applications Depending on the law or the rule Or the interpretation in question, I would say Like whether it's common law Or a statutory construction That's been narrowed and then expanded So maybe it applies differently In different circumstances But what do you think of his Distinction between Pugh and Beckles That it may not be perfect It may be gossip or thin But basically Pugh looks like They're treating a change to the guidelines By the commission as Like an agency rule that affects criminal cases Or for that matter a statutory amendment And that's one basket Even though the Pugh basket Is pretty close to interpreting guidelines But in the other basket is the interpretive game And that's different And that's just a different line of cases My answer to that would still be To go to that part in Beckles When the court explicitly says That the inquiries are different They're both about fair warning But the inquiries are different Because when you're talking about A change to the guideline Whether it's done by the commission Or done by the court Or by Congress Who has also changed guidelines It's still making a change And it's a change In Beckles there was no change The question was whether this phrase Which was so broad Which could have encompassed all kinds of things Was unconstitutionally vague Here we have a change What do you mean? That of course The residual clause very easily Could have the exact same change dynamic As this case That is very easy to posit I'm very confident I could find a circuit That has the exact same sequencing As? As this case As for Wiebe In other words you have a situation Where you have prior authority The unanticipated change And how to deal with the residual clause So I You mean expanding it? Yeah Well actually there's an interesting passage In Bowie That talks about the difference between A due process problem with a vague law And the problem with Applying a changed interpretation And in Bowie it actually says That when you have a vague law Someone actually could be As a factual matter More on notice That it encompasses their conduct Because it could be anything Whereas when you're talking about A change law that has been Previously narrowly construed And then later expanded You're in a different world And so I would say that That's how the inquiries are different That when you're talking about a change In particular a change where There has been a narrowing construction Then you are looking at something A lot more like The ex post facto evaluation in Pew It's a very hard thing for Mr. Osbury to get his mind around the idea That an ex post facto analysis With respect to the advisory guidelines Is not Somehow is completely different From the due process analysis When we're talking about The ex post facto principle Embodied in the due process analysis When both of which are about fair warning So his position is there That Beckles itself tells us That the analysis in Beckles Does not necessarily mean That there is no due process challenge When it's about the ex post facto principle Thank you Thank you for your arguments And the case is submitted